It opens September 3-A.M. Mr. Dowd. Good morning and may it please the Court. Matthew Dowd for the Appellant Trinco Investment Company. Your Honor, we're here on a, trying to reverse a 12b6 dismissal of a takings claim. Are a couple. Did you file a motion to amend the complaint below? No, Judge Morgan. Why not? Two reasons. One, the reason we got dismissed is court dismissed it based on an affirmative defense. And as we set forth in our brief, we do not have to plead facts that anticipate an affirmative defense. No, but if you, if you pled the facts such that there's no other conclusion but that the affirmative defense is correct, then it's a proper dismissal. And I think the whole thing turns on whether or not your complaint alleges that the fires were set for management overall, or whether they were set to address the immediacy of the iron complex fires. And that's the whole issue in a nutshell. Yes. So why didn't you just amend the complaint to go back and strip out the iron complex stuff and put in more about overall management? Your Honor, I think you could have done that, but it wasn't necessary in the case law. Our case in Cary v. United States basically says that for a property owner to survive judgment on the pleadings, the property owner has to plead that the landowners must plausibly show that the consumption of their property by fire was the likely foreseeable result of forest service action. And when you read our complaint, and in particular, paragraph 16 of the complaint, where we allege that the fires that damaged our client's property... Is there some reason beyond just fighting the fire? Yes, Chief Judge Rader, I think we do. And I think part of the purpose of presenting the complaint this way is to present an accurate picture to the court. We're not alleging that all of the conduct by the Forest Service in the shaft of Trinity National Forest during this incident was non-emergency related. What we're alleging is that at least some of it was, and at least some of the conduct by the Forest Service that damaged Trinko's property was non-emergency related. And that's where you get to paragraph 16, where we say that one of the Forest Service's management objectives was the reduction of fuel buildup. That does not implicate emergency only responses. And as we set forth in our reply brief, we explained, if you look at some of the publicly available documents in the Forest Service, it's clear that the Forest Service has responsibilities that go beyond emergency only conduct. And our particular point as well is that even if much of this conduct was emergency related, that's an affirmative defense, and that has to be dealt with with actual facts presented by the government. I'm going to ask a dumb question. I don't know the answer to this. But why wouldn't you file this under the Federal Tort Claims Act, at least for, I mean, your own admission now is maybe some of this was because of the iron complex, but some of it wasn't. And so the sum of it that was the result of the iron complex wouldn't, I don't know, that's your question. Wouldn't you possibly be able to file a tort claim under the Federal Tort Claims Act for the government damaging the property as a tort? Yes. Judge Moore, that is a possibility. I think it's clear from the record that it was before my time in the case. But even beyond that point, there are two answers to that question. One, just because we have the possibility of a tort claim in this instance doesn't preclude us from bringing a takings claim. And then second, our view... Well, hold on. But it's an either or, right? If it's a tort, it's not a taking. If it's a taking, it's not a tort. You don't get both. Isn't that right? Yeah, I think generally that's right. But there's nothing in this case that shows that the Forest Service's conduct was necessarily a tort. Under a tort law, you have to show negligence. We're not alleging that the Forest Service was negligent in setting these fires. What we're saying is that the Forest Service set these fires intentionally with a particular goal in mind, and that goal being non-emergency reduction of fuel buildup in the forest. Basically, it comes down to the issue of whether you read paragraph 16 as being solely limited to emergency activities. And I don't read it that way. I think we've cited Forest Service documents, we've cited Title 36 of the CFR, we've cited other cases, the Forest Service manual, all which clearly explain that the Forest Service's conduct and responsibilities go far beyond emergency-only related activities. And once you get there, you can't dismiss the complaint at 12b6 stage here. And even so, additionally, when you bring up the affirmative defense of the necessity defense, which the government, that's the only basis the government is relying on at this stage here, again, it gets back to the issue of you can't dismiss a complaint at the 12b6 stage based on an affirmative defense. The only reason you can is if the only way to read the complaint is as alleging all elements of the necessity defense. I guess, in terms of the other arguments we have, it really comes down to that main issue, when you look at paragraph 16 of the complaint, whether there's any plausible reading. And again, going back to the Supreme Court case law that governs this, Twombly and Iqbal, all we have to show to survive here is that it can be plausibly read to understand that the Forest Service action in this instance, and with respect to Trinko's property, involved at least some non-emergency activities. And there's nothing in the record that would dispute our reading of it. The trial court in this instance basically did not give an explanation. If you look at the trial court's opinion, the trial court judge's conclusory... What about, I mean paragraph 16 is what you keep pointing to, what about the fact that your first sentence says, one of the Forest Service's management objectives on the shafts of Trinity National Forest at that time was the reduction of fuel buildup on national forest lands which had accumulated under the Forest Service's historical fire abatement policy. That is just a statement of what you say one of their management objectives are, but you don't say that that is the reason that any of these fires were set. Nowhere in the complaint do you allege that. Judge Moore, with respect, I disagree. Because if you read the following sentence, it says, as part of its fire management of the iron complex... Ah, of the iron complex, but that's the fires that are blazing. That's the necessity thing. It is, but only if you can conclude that everything that was going on in that complex and in that forest was emergency related. No, no, no, no. This doesn't say in that forest, right? The first sentence says, one of the forest manager's objectives on the shafts of Trinity National Forest, right? The next sentence is, as part of its fire management of iron complex. Not as part of its fire management of the shafts of Trinity National Forest, but of iron complex. And everyone agrees that iron complex is a reference to the wildfires. It's not a reference to a place absent the wildfires. It's a reference to the ongoing wildfires. Agreed. Agreed, Judge Moore. But even within the management of that iron complex, the question is whether everything the Forest Service did was necessarily connected to emergency firefighting. And under the necessity doctrine, and shown whether an emergency had existed at the time, the Forest Service has to come with some evidence, some factual basis to show that there is some immediate or temporal nexus between their conduct, their actions of burning Trinko's property, and their need to fight the fire. Well, at least for some of these claims, you admit right in the complaint that it's located next to the land where the fire was taking place, right? Don't you do that? I think if you look at paragraph 22, and this is at A16, for example, we say that this activity was undertaken adjacent to the Cedar fire. Right. So you're saying they have to come forward. You survive 12B6 because they've got to be able to come forward factually and show it's either temporally or spatially close, such that it was necessary. But your own allegations say the activity was adjacent to the fire. Why does the government have to come forward and prove what you already alleged yourself in the complaint, that they burned land adjacent to where the fire was burning? Two points, Judge Moore. First of all, that only applies to the burning of mud springs. So we don't say that for every particular fire. But even so, when you read that sentence, the question is at the 12B6 stage, how are the inferences made? The inferences have to be made in the non-moving party's favor. In other words, Trinko's favor. And the question is when you read that, does adjacent, does that word mean that it is so close in space and or in time that whatever the Forest Service did at that point satisfies the necessity doctrine? And you can't tell based on that. I could read it both ways, and I think you plausibly read that as being adjacent, either close or far. Now, one thing to keep in mind is just the spatial topography that's being dealt with here. The forest itself is 2.1 million acres. The fire itself, according to one report, burned about 105,000 acres. And the property size that we're dealing with, I think the largest property that we have was 714 acres. And I think the smallest one was about 57 acres. And so it really gets down to the facts of what happened here. And I'm not saying that Trinko or my client will necessarily prevail on every one of these claims. But the important point here is we've alleged all the elements of a takings claim. And once we've done that, in terms of a takings claim, we said we own this property. This was authorized conduct by the government. They destroyed our property. They've taken our property for public use. Those are the elements of a takings claim. Once we've done that- But do you agree with the law that if it was necessary that your client would lose? If it was necessary to prevent the spread of the fire, close in proximity, close in time, that end game, not at 12B6H, but end game, your client would lose. Do you agree with the police power necessity doctrine state of the case law? Your Honor, we haven't disputed that at this stage of the game. We're not disputing that for purposes of our appeal here. Now, I will point out that we haven't found a case in which this necessity doctrine has been applied under the so-called conflagration rule in public lands like this. Now, we're not disputing, for example, Bowditch v. Boston and those early Supreme Court cases where they say, for example, the government come in and destroy a house because there's a fire raging down the street. Now, if you look at all those cases, though, it's clear based on the facts presented in this case, however they got those facts, it's clear that the necessity doctrine did apply. There was no question about it. For example, in Bowditch, they destroyed the house, but they also had three engineers at the scene and the engineers made a decision that it was necessary to burn the house. And if you look at the Civil War cases or the World War I cases like Omnia Commercial or the World War II cases like Caltex. Now, with Caltex, for example, the Japanese... That's when they bomb, they blow up the oil refineries in Manila? Yes, yes, Judge Rader. And did they have engineers on site to say that was necessary? Yes, they did. They actually, in that case, they had army commanders and they enlisted an engineer from the oil company to act on behalf of the army. And that was days after the Pearl Harbor attack. So when you read the facts of that case, there's really no dispute that in those instances, the government's actions were necessary to avert a serious imminent public harm. Just out of curiosity, do you know how much of this national forest burned in the end? Judge Benson, I believe from the information that I have today, there's one report that indicates that approximately 105,000 acres of the forest. And I believe the forest itself is 2.1 million acres. So that comes out to about 5% of the forest. But again, this gets to the facts of the case, and we haven't gotten to the facts of the case. We've alleged our elements of the casings claim, and we believe that we should at least get through discovery. I see I'm into my rebuttal time. Let's save the rest of it. Thank you. Good morning. May it please the Court. Nina Robertson on behalf of the United States. Trinco's complaint does not state a claim for just compensation under the Fifth Amendment. Under well-established background principles of law, most recently reaffirmed in Lucas by the Supreme Court, the government is not liable for a taking when it acts to control the spread of a fire. What if the facts would show that the Forest Service made a decision to solve another problem while they were fighting the fire, and that they decided let's burn up some of this underbrush while we're taking care of the fire issue? Your Honor, the plaintiffs do not allege that in this case, though they would like the Court to believe that. That is not alleged in the operative paragraph 16 that the plaintiffs direct the Court to. As Judge Moore suggested, the plaintiffs have never connected that type of forest management to any of the activities that are at issue in this case. I don't know. Under the causes of action, like paragraph 30, for example, they further allege, but for this action by the government, a la the setting of the fires on their land, the subject lands and timber would not have been damaged by the existing wildfires. I don't know. That seems like a statement that it wasn't necessary to burn their land. The wildfires would not have come upon their land. Your Honor, the government actually is not sure what to make of that but-for statement, because really all that is doing is attempting to show some sort of causation between what the government did, which was allegedly enter onto its land and set fire to its land, and the damage at issue here. They're not, however, saying that the government acted with any other purpose but to control the spread of the fire. It isn't in the facts, because we aren't in the facts. How far away from the fires, the iron complex fire, was the fire set by the Forest Service? Your Honor, that's not on the record of this case, but I can assure you that all- Wouldn't you kind of need to know that? What if, of course, in two of them it was adjacent, but there are other properties that were not adjacent? What if they're miles away? Your Honor, the test that has been-the rule that has been affirmed again and again by the Supreme Court is that the government only needs to show that it's been acting with the purpose of controlling the wildfire. No, no, no, no, no. The purpose is- No, no, no, no, no, ma'am. Lucas, what you say, that's footnote 16. In cases of actual necessity to prevent the spreading of fire. To prevent the spreading of fire is the- No, no, no. You were expressing it in a form of purpose. The government only needs to show that we were trying to prevent-no. What it says, in cases of actual necessity, that implies not our best efforts, not good intent, but it actually had to have been necessary for you to do it. That's the language the Supreme Court repeatedly used, actual necessity. Well, Your Honor, I respectfully disagree. The court in Omnia did not use the word necessity at all. It just stated the rule that if the government is acting to control the spread of the fire, it's not liable in taking. That's what the Omnia court held. If the facts showed that, as we discussed briefly, there's 2 million acres, let's say the fire is in one corner and they're burning something in the other corner, would that be relevant? Your Honor, so long as the government was acting to control the spread of the fire that is underway in that case- Is the government working on a fire that's hypothetically 5 miles away? Your Honor, if the government is acting with the purpose of controlling the wildfire issue and if that activity is associated with fire control- But now we're into the legal issue that Judge Moore mentioned. Is there a necessity element there? Your Honor, the court has never imposed a necessity requirement on the government, certainly not as an affirmative defense, and the government's position is that necessity can be presumed in firefighting context. Fires are special. The longer they burn, the more property and timber they destroy. So you're going to defend the government in my hypothetical where they're burning something 5 miles away from where the iron complex fire is. As Your Honor may be aware, fires spread very quickly, especially in large- But wouldn't you burn something that's just a mile away first instead of burning the fire? Your Honor, the government may set a fire in the instance of 5 miles away because, in fact, they deemed it necessary for wind patterns, for a variety of circumstances that we can't necessarily assess in this case. But the point is wouldn't we need to assess those facts to reach a judgment as to whether there was a taking place? On this complaint, no, Your Honor, because the circumstances- dealing with the iron complex fire, it was actually set to clear some undergrowth. However, Your Honor, we don't have that case here. The case of the 5 miles away and the government acting with a different purpose is simply not before the court here. But we don't know that, do we? We do know, Your Honor, because the plaintiffs have alleged in paragraph 16 that the only purpose of the government's actions in this case, the only reason on which it entered into the properties described in paragraph 114 is for management of the iron complex. There were numerous wildfires underway in the Shasta-Trinity National Forest, and the government has established, as alleged in paragraph 15, an incident management team to manage those fires. Are you saying that the government can do whatever it wants to prevent the spread of its fire without it constituting a taking? Your Honor, that is the government's position. I know that's what I'm asking. That's what you're saying. Where does that come from? The government can act negligently, unreasonably, destroy property in its wake, do whatever they want so long as they can say later, oh, we were trying to prevent the spread of the fire? Your Honor, your question was first based on just a constitutional question. We believe that there is no entitlement to taking compensation when the government is acting to control the spread of the fire, and that is based on Lucas, Bowditch, Caltech, Omnia, Raleigh, a long unbroken line of Supreme Court cases. Regardless of what they do? You've been taking Judge Rader's example. Now I'm almost buying into this tort thing. Your Honor, certainly, as to the constitutional issue, we don't think that there is a compensable right to take it. However, if the plaintiff believes that the government has acted negligently, they certainly, as Judge Moore suggested earlier, have an action in tort, and they can, under the FCCA, file such a claim. The district judge said in his opinion that when the government acts to prevent the spreading of the fire, the government is not required to compensate plaintiffs for the property that's destroyed. Do you think that's an accurate statement? It doesn't need to be qualified at all? Well, Your Honor, I think the judge in that statement was referring to Fifth Amendment compensation. I don't think that the judge meant to imply that... To act negligently, Your Honor. Sure, certainly, Your Honor. I don't think that Judge Foute was at all speaking to the FCCA matter. I just wonder why you pounce on this pleading. In the Patton case we just heard, we talked about one of ordinary skill in the art. You would almost hope a district judge is that. You would know when a pleading is plausible or not. But why wouldn't the government get the benefit of the doubt of this pleading? That's what I don't understand. It's not that bad. You want to read all kinds of things into this pleading. You're saying it was only out of necessity to control the fire. Your Honor, the purpose of Rule 12 and Rule 8 is to ensure upfront scrutiny of the legal sufficiency of complaints. And Iqbal and Twombly require that plaintiffs allege facts that state a plausible claim for release. Isn't this at least ambiguous? Your Honor, no, because in paragraph 16... Oh, you think they'd come right out and say this was a necessity. They allege, Your Honor, that as part of its management of the iron complex, not of any other type of... That's just being fair. Of course they allege that because it was in part for management of the iron complex fire. But they have not... We're getting so picky on pleadings. We're turning 12b-6 into this all-purpose, well, let's give it a try. Maybe we get a judge somewhere to agree it's not plausible on its face. And then you'd have to do what Judge Martin suggested with your pun. People are going to be moving to amend. Well, Your Honor, certainly the plaintiffs were entitled to amend and further specify that the government was taking action that wasn't related to controlling the spread of the fire. If they'd have amended, then we'd have gone on with the case. But the government jumps in, the Environment Division jumps in early, and you didn't plead properly, so we're going to throw this out. Respectfully, Your Honor, the plaintiffs were entitled to amend their complaint even after... Well, but they quite properly, I think, perhaps quite properly think it was enough. They still do. That's why we're here. Your Honor, they even were entitled to amend their complaint after the dismissal of it if they had wanted to move... I guess my question is why should we turn the law into that kind of procedural battle unnecessarily? Your Honor, the plaintiffs have an obligation to plead facts that state a claim for relief. This is a legal question here, and they have not linked the Forest Service's activity to anything but management of a wildfire. If they really had the concern and believed it's true that the government was actually... Well, they certainly did. In paragraph 16, they linked it to reduction of fuel buildup on national forest lands. Your Honor, that statement at best is an allegation that sets context, and at worst is a stray allegation that does not link government purpose to the activities at issue in this case. I don't understand your answer at all. Your Honor, the reference to management objectives is not linked at all to the activities that allegedly damaged the plaintiff's property. The only sentence that actually links what the Forest Service did to the damage to the plaintiff's property is the next sentence, and that is only... You're saying that the management objectives on the shift to Trinity National Forest, a la the fuel buildup, are not linked to these fires. That's what you're saying? The plaintiffs may be alleging that they are linked to these fires. Well, then that's enough plausibility. That's all they have to have. But what they're referring to, Your Honor, is management that was fire abatement that led to fuel buildup, not Forest Service activity that is described in paragraphs 10 through 14, which is the intentional lighting of fires to control the spread of fire. Ms. Robinson, a lot of your argument hinges on this non-actual necessity doctrine, and yet I looked and don't see that there's really even a single case that sets down a conflagration rule as to what exactly is required for a taking in a fire situation. Well, Your Honor, the long line of cases that you may have reviewed state clearly that the government is not liable for a taking when it's acting to control the spread of a fire. Well, that's all dicta. There's cases that have kind of similar fact situations. They're blowing up the Manila Harbor oil refineries and things, but isn't there some ambiguity in the law here as well? Your Honor, in fact, there's the opposite of ambiguity. There's total clarity and consistency over centuries of case law that the Supreme Court has considered. And so is actual necessity required or not? Your Honor, the government's position is that necessity should be presumed in firefighting context. But the Supreme Court doesn't say that. Bowdoin, the original, or whatever it is, Bowditch, the original says in cases of actual necessity. And it says that alongside the description of the fire at issue. It doesn't state that the government must show actual necessity. Actually, it says at common law, everyone has the right to destroy real and personal property in cases of actual necessity to prevent the spread of fires. Bowditch isn't even a Fifth Amendment case. There was no responsibility on the part of the federal government. But it's discussing the common law, which is at the root of the background principle that Lucas reiterates. But Lucas also says actual necessity incites Bowditch. So I don't see how you read actual necessity out of these Supreme Court cases. We're not reading it out, Your Honor. We're saying that the court seems to presume that when you're in instances of wildfires, necessity exists. Because fires, this rule is special and has been repeated over and over, because fires themselves prevent a unique public safety threat in which necessity is always at issue. And in this case, Your Honor. And in those cases, though, that's because the fire was right next door to the buildings, right? But we don't know. This is a forest. It's thousands of acres wide. And some of the tracks that you burned were, say, 700 acres wide. We don't know how close in proximity that was to the fire to know whether it was a case of actual necessity. Your Honor, what we do know is that the only reason that the government was setting those backfires was to control the spread of numerous wildfires that were underway throughout the area. That's what you said now. But their allegation is that also it was reduction of the fuel. Your Honor, they simply don't allege that. That allegation is simply not in the complaint because the second sentence of paragraph 16 is the only allegation that links the Forest Service's actions to the damaged property at issue in this case. We simply don't. We have a case in which necessity is apparent. As Your Honor pointed out, for the Mud Springs property, the eagle and the cedar fire were adjacent. Apparent. That's an interesting phrase there, isn't it? I'm sorry? It's apparent that necessity is. Does that require us to get into the facts? Your Honor, I meant to say apparent on the face of the complaint that necessity was at issue in this case because you had numerous fires raging. The government had appointed an incident management team to manage those fires, and at least two of them were adjacent to Twin Coast property. As well, those fires had been burning for over a month and were still uncontained because the Forest Service was taking these fire control actions. And based on the long-standing precedent, we believe that that is sufficient. Those facts allege that necessity existed even if the court were to require some necessity showing. Moreover, Your Honor, I would just like to conclude by saying the plaintiff has asserted that the Cary test was controlling and is certainly not in this case. While the Cary case had something to do with forest fires, the facts are completely different and that legal test that he began with is not relevant here. Thank you. Thank you, Mr. Dowd. Your Honor, just a couple of quick points. My counsel for the government asserted that forest fires are quickly moving. There's two points to that. One, it's a factual issue that we don't know is true. And two, in one of the documents that the Forest Service itself cited, there's a statement that says that the fires started on bridge lines and slowly backed down the bridges. So we just simply don't know what happened here and that's why we want to get that out of the way. But you're not alleging the state that never can there be a 12-feet sit in a case like this, right? You're not saying in order to determine always since it's an affirmative defense, never ever, no matter what is pledged, can there be a 12-feet sit? No, we're not, Judge Moore. But what we are saying is that the Fifth Amendment does put certain constraints on government action. And if the government is going to come in and assert a defense of saying that its actions were necessary, they have to prove it with some facts rather than just saying that any action taken under the aegis of forest fire fighting constitutes an emergency. And as we said, given the topography here, you can't tell that without the facts. And one last point with respect to the... Wait, that sounds like you're saying there can never be a 12-feet sit. No, Judge Moore. If you hadn't mentioned anything about the fuel buildup and all that sort of stuff in your complaint, and all you had said is the government did this to manage the iron complex, they destroyed a bunch of our land that was adjacent to these wildfires, we deserve to get compensated. What about them? Judge Moore, that gets you past 12-feet sits. But... How? Because we're saying at least some of the action was done to reduce fuel buildup. Oh, no, no, I said hypothetically. You don't have anything about fuel buildup in your complaint. The only thing your complaint says is government did this to manage the iron complex, these properties were adjacent to the burning wildfires, therefore we deserve to be compensated. Yeah, Judge Moore, I think that's a very difficult case for us to have made. We would probably lose on that case because the only plausible reading of the complaint is that it's probably emergency-related activity. Okay. Thank you. Thank you, Mr. Dowd. That concludes our...